**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JUSTIN STABENOW and
MARK ZELAKOWSKI,

Plaintiffs,

v. CASE NO.:

EQUIFAX INC. a Foreign Profit Corporation,

Defendant.
____________________________________/

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, JUSTIN STABENOW and MARK ZELAKOWSKI, bring this action against EQUIFAX INC. ("EQUIFAX"), on behalf of themselves and all similarly situated consumers (the "Class"), and allege as follows:

## NATURE OF THE ACTION

1. This class action lawsuit is brought on behalf of the Plaintiffs and all other persons similarly situated against EQUIFAX for its failure to adequately protect its consumers' confidential personal information and/or private personal, health and/or financial information (collectively referred to as "Sensitive Information") which led to the loss, theft, disclosure and/or breach of such information resulting in violation of her and the putative class's federal and state constitutional rights, rights under the laws of the United States and the State of Florida, and damages.

2. In today's society, the privacy and security of customer information is a top priority for consumers and their families. Federal laws require individuals and

organizations that handle Sensitive Information to have policies and security safeguards in place to protect consumers' Sensitive Information.

3. EQUIFAX collects and stores Sensitive Information, including names, phone numbers, addresses, social security numbers, dates of birth, financial account information and other data, for 820 million consumers worldwide.

4. EQUIFAX uses an open-source software called Apache Struts on its website. EQUIFAX chose not to install a freely available "patch" to fix a vulnerability with the software after that security problem was detected and publicly announced on March 7, 2017 by various organizations.

5. As a result, from May 13, 2017 to July 30, 2017, individuals hacked into EQUIFAX's computer system using the vulnerability and stole data impacting 143 million people, or roughly 44 percent of the U.S. population.

6. EQUIFAX could have prevented the data breach by implementing the free patches and fixes provided by the Apache Software Foundation in March 2017.

7. EQUIFAX also could have prevented the data breach by implementing other basic cybersecurity protocols, such as encrypting this information or segmenting the data in separate databases to prevent hackers from being able to access all of a person's information at once. EQUIFAX chose to implement none of these protocols.

8. EQUIFAX discovered the data breach on July 29, 2017 but did not to alert consumers to the problem until it posted a notice on its website on September 7, 2017, six weeks later.

9. EQUIFAX's delay in notifying consumers prevented millions of consumers from taking immediate action to protect themselves from the risk of identity theft and fraud.

10. Rather than notifying consumers, three company executives sold large amounts of their shares of EQUIFAX stock totaling nearly $1.8 million in the days after the breach was discovered July 29. The transactions in question were initiated by Chief Financial Officer and Corporate VP John Gamble who sold $946,374 worth of shares, President of U.S. Information Solutions Joseph Loughran who dumped $584,099 and President of Workforce Solutions Rodolfo Ploder who sold $250,458 in shares. These transactions were not pre-scheduled trades and they took place on August 2, three days after the company learned of the hack.

11. The Sensitive Information accessed primarily includes names, Social Security numbers, birth dates, addresses and driver's license numbers. In addition, credit card numbers for approximately 209,000 U.S. consumers, and certain dispute documents with personal identifying information for approximately 182,000 U.S. consumers, were accessed.

12. The Sensitive Information disclosed by EQUIFAX can be, and has been, used by third parties (or by other third parties to whom the Sensitive Information is sold or given) to establish lines of credit, obtain driver's licenses, obtain bank and credit accounts, commit income tax fraud, seek medical care under the identity of and using the insurance of the Class members or for other fraudulent identity theft purposes.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because: (a) at least one member of the putative class is a citizen of a state different from Defendant; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) none of the exceptions under the subsection apply to this action.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

15. Plaintiff STABENOW is a resident of Hillsborough County, Florida.

16. Plaintiff ZELAKOWSKI is a resident of Hernando County, Florida.

17. As EQUIFAX consumers, Plaintiffs and others similarly situated consumers nation-wide provided Sensitive Information, or had their Sensitive Information provided, to EQUIFAX.

18. Defendant EQUIFAX is a foreign corporation headquartered in Georgia. EQUIFAX is one of the largest U.S.-based credit reporting agencies that collect and analyze detailed records of financial data for records of a wide range of consumers worldwide.

## CLASS ALLEGATIONS

19. **The Class**: Plaintiffs bring this action pursuant to Fed.R.Civ.P. 23(b)(2)

and (3) on behalf of themselves and a Class of similarly situated individuals defined as: All individuals in the United States who are or were consumers of EQUIFAX and whose Sensitive Information was disclosed by EQUIFAX between May 4, 2017 and present.

20. **Numerosity**: The exact number of members of the Class is unknown to Plaintiffs at this time, but on information and belief, there are over 142,000 of consumers who were adversely affected by the disclosure of Sensitive Information, making joinder of each individual member impracticable.

21. **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs and the Class sustained damages as a result of the Defendant's uniform wrongful conduct.

22. **Commonality**: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members.

## ADDITIONAL COMMON FACTS

23. As a result of EQUIFAX's failure to implement and follow appropriate security policies and procedures and/or to properly educate its employees, Plaintiffs' Sensitive Information is now disclosed. Plaintiffs now face a substantial increased risk of identity theft, credit and tax or insurance fraud. Indeed, numerous consumers whose Sensitive Information was compromised due to EQUIFAX's failure to protect their Sensitive Information will be subject to an increased risk of identity theft and tax fraud. As a result, Class members will have to spend significant time and money in

the future to protect themselves.

24. As a result of EQUIFAX's data breach, Plaintiff STABENOW has suffered actual damages. On September 21, 2017, he received a telephone call from Chase Bank advising him that an online purchase for $515.38 had been made. Plaintiff STABENOW contacted the vendor, Rock Auto, which advised him that they were given an address in Miami where the merchandise was being shipped. Rock Auto informed him that they had all of his information: name, address, social security number, and bank information.

25. Plaintiff STABENOW tried to check his credit report, but he could not access it. He was told he can check it on EQUIFAX, but he no longer feels confortable submitting Sensitive Information to EQUIFAX.

26. As a result of EQUIFAX's data breach, Plaintiff ZELAKOWSKI has suffered actual damages. After the data breach but prior to September 7, 2017, Plaintiff ZELAKOWSKI discovered that an unidentified third party had used his Sensitive Information to fraudulently obtain two Green Dot money card accounts. The cards were sent to Plaintiff ZELAKOWSKI's address but the account information was provided to the third party.

27. After discovering this, Plaintiff ZELAKOWSKI canceled the fraudulent Green Dot money card accounts. However, soon thereafter, two new Green Dot money card accounts were fraudulently obtained using Plaintiff ZELAKOWSKI's Sensitive Information.

28. As a result of the obvious risks caused by Defendant's misconduct,

other reasonably prudent individuals whose Sensitive Information was disclosed by EQUIFAX will feel compelled to incur the costs of credit monitoring/identity theft protection services.

29. The costs of credit monitoring/identity theft protection services vary depending on a number of factors, including the amount of protection provided. For example, TransUnion's webpage advertises its credit monitoring product for $19.95 per month (plus tax for NY residents). EQUIFAX's webpage advertises its identity-theft and credit-monitoring product, called EQUIFAX Complete™ Premier Plan, for $19.95 per month. Experian's webpage advertises its identity theft-protection product, called ProtectmyID, for $19.95 per month. Finally, AllClear ID's webpage advertises its identity theft and credit-monitoring product for $14.95 per month.

30. Identity fraud arising from data breaches similar to the disclosure in this case give rise to up to three years or more of future exposure. Therefore, while the heightened risk here will likely persist for many more years to come for the putative class members, it is reasonable to project that the majority of any identity theft or Sensitive Information misuse will occur within the three years following the disclosure.

31. The three year cost of the three most commonly used credit monitoring/identity theft protection services is $718 per putative class member and the lowest priced of these services – AllClear ID – is $538 per putative class member.

32. Unlike other data breaches, not all of the people affected by the

EQUIFAX breach may be aware that they are consumers of the company. EQUIFAX gets its data from credit card companies, banks, retailers, and lenders who report on the credit activity of individuals to credit reporting agencies, as well as by purchasing public records.

33. Other consumers throughout the nation have already suffered actual harm as a result of the data breach. For example, New York Senator James Tedisco (R – Saratoga) has stated publicly that he was one of the 143 million affected and, a week later, he received two letters from the Social Security Administration. One thanked him for changing his address and the other thanked him for setting up a new address.

34. On or about September 7, 2017, EQUIFAX established a website regarding the data breach. However, as of September 7, 2017, consumers were unable to find out if their Sensitive Information was included in the data breach.

35. Rather than telling consumers if their information was included in the data breach, the EQUIFAX website guides consumers to sign people up for TrustID, an EQUIFAX service offering a suite of security products to protect them from digital theft. Conveniently (for EQUIFAX), those who sign up for TrustID are required to waive their right to any class action lawsuit against the company, as stated at the bottom of TrustID's terms of service.

36. Defendant has engaged in activities and practices which are in violation of Florida and/or federal laws, rules, or regulations, and Defendant's legal duties thereunder, including but not limited to Fla. Stat. § 501.171. Plaintiffs object

to said activities and practices.

37. Plaintiffs have been required to retain the undersigned counsel to represent them in this action and are obligated to pay them a reasonable fee for their services.

## COUNT I: NEGLIGENCE

38. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 to 37 as if fully restated herein.

39. Defendant obtained Plaintiffs' and Class members' Sensitive Information, and had a duty to exercise reasonable care in safeguarding and protecting such information from being accessed and/or disclosed to third parties.

40. Defendant failed to have proper procedures, training and policies in place to detect and prevent the improper disclosure and misuse of the Plaintiffs' and members of the Class's Sensitive Information. The breach of security, voluntary disclosure, unauthorized access, and resulting injury to Plaintiffs and the Class were reasonably foreseeable, particularly in light of the heightened importance of digital privacy in today's society and in light of Defendant's inadequate training, inadequate data security system and failure to encrypt the data or implement a freely available patch.

41. Defendant, through its actions, unlawfully breached its duty to Plaintiffs and the Class by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class members' Sensitive Information.

42. Defendant negligently failed to have procedures in place to detect and

prevent access to and/or disclosure of Plaintiffs' and Class members' Sensitive Information by or to unauthorized persons.

43. But for Defendant's breach of its duties, Plaintiffs' and Class members' Sensitive Information would not have been compromised.

44. Plaintiffs' and Class members' Sensitive Information was disclosed as a proximate cause of Defendant failing to exercise reasonable care in safeguarding such information by adopting, implementing, and maintaining appropriate security and training measures and encryption.

45. As a result of Defendant's conduct, Plaintiffs and members of the Class have suffered an increased risk of identity theft and tax fraud. Plaintiffs and Class members suffered and will continue to suffer actual damages including, but not limited to: expenses and/or time spent on credit monitoring and identity theft insurance; reduced or delayed tax refunds and time spent with the IRS addressing tax fraud issues; time spent scrutinizing bank statements and credit reports; missed wages; damages caused by credit card or other financial fraud; expenses and/or time spent initiating fraud alerts. Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT II: BREACH OF FIDUCIARY DUTY

46. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 to 37 as if fully restated herein.

47. Defendant owed a fiduciary duty to Plaintiffs and the Class to protect the Sensitive Information.

48. Defendant breached its fiduciary duty to Plaintiffs and the Class by:

a. Failing to implement proper policies and procedures for electronic information systems that maintain sensitive and confidential patient information, including but not limited to encryption;

b. Failing to implement proper policies and procedures to prevent, detect, contain and correct security violations, including but not limited to e-mail verification and/or phishing and malware prevention software;

c. Failing to train or educate consumers regarding protection of sensitive and confidential patient information, and the threats thereto;

d. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard sensitive and confidential patient information;

e. Failing to periodically audit their systems to prevent security breaches; and

f. Otherwise failing to safeguard Plaintiffs' and the Class members' Sensitive Information.

49. As a result of Defendant's conduct, Plaintiffs and members of the Class have suffered an increased risk of identity theft and tax fraud. Plaintiffs and Class members suffered and will continue to suffer actual damages including, but not limited to: expenses and/or time spent on credit monitoring and identity theft insurance; reduced or delayed tax refunds and time spent with the IRS addressing tax fraud issues; time spent scrutinizing bank statements and credit reports; missed wages; expenses and/or time spent initiating fraud alerts. Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT III: INVASION OF PRIVACY

50. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 to 37 as if fully restated herein.

51. EQUIFAX's misconduct and failure to protect Plaintiffs' and Class members' Sensitive Information constituted an invasion of their privacy and Sensitive Information.

52. Said Sensitive Information is not a matter of public concern.

53. EQUIFAX's misconduct resulted in an unreasonable intrusion into the private life and matters of Plaintiffs and the Class.

54. EQUIFAX's failures and misconduct constituted a public disclosure of private facts, the nature of which a reasonable person of ordinary sensibilities would find objectionable and offensive.

55. As a direct result of EQUIFAX's failures and misconduct, Plaintiffs' and the Class's Sensitive Information were disclosed to the public.

56. As a result of Defendant's conduct, Plaintiffs and members of the Class have suffered an increased risk of identity theft and tax fraud. Plaintiffs and Class members suffered and will continue to suffer actual damages including, but not limited to: expenses and/or time spent on credit monitoring and identity theft insurance; reduced or delayed tax refunds and time spent with the IRS addressing tax fraud issues; time spent scrutinizing bank statements and credit reports; missed wages; expenses and/or time spent initiating fraud alerts. Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

A. Certify this case as a class action on behalf of the Class as defined above, and appoint JUSTIN STABENOW and MARK ZELAKOWSKI as class representatives and undersigned counsel as lead counsel;

B. Find that Defendant is liable under all legal claims asserted herein for its failure to safeguard Plaintiffs' and Class members' Sensitive Information;

C. Award damages, including statutory damages where applicable and punitive damages, to Plaintiffs and the Class in an amount to be determined at trial;

D. Award restitution for any identity theft, including, but not limited to, payment of any other costs, including attorneys' fees incurred by the victim in clearing the victim's credit history or credit rating, in obtaining a tax return, or any costs incurred in connection with any civil or administrative proceeding to obtain a tax return or to satisfy any debt, lien, or other obligation of the victim arising as the result of Defendant's actions;

E. Award Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

F. Award Plaintiffs and the Class pre- and post-judgment interest to the maximum extent allowable under the law;

G. Award equitable, injunctive and declaratory relief as may be appropriate under applicable laws, including but not limited to: (i) the provision of credit monitoring and/or credit protection services for the Class for at least five years; (ii) the provision of bank monitoring and/or bank monitoring services for the Class for at least five years; (iii) the provision of identity theft insurance for the Class for at least five years; (iv) the provision of credit restoration services for the Class for at least five years; (v) requiring that Defendant receive periodic compliance audits by a third party regarding the security of its computer systems used for storing current and former patient data, to ensure against the recurrence of a data breach by adopting and implementing best security data practices; and (vi) a declaration that Defendant was negligent and liable under all legal claims asserted herein for its failure to safeguard Plaintiff's and Class members' Sensitive Information; and

H. Award such other and further legal or equitable relief as equity and justice may require.

Plaintiff requests a trial by jury of all claims so triable.

DATED this 2nd day of October, 2017.

Respectfully submitted,

WHITTEL & MELTON, LLC
*/s/ Jay P. Lechner*
Jay P. Lechner, Esq.
Florida Bar No.: 0504351
Jason M. Melton, Esq.
Florida Bar No.: 605034
One Progress Plaza
200 Central Avenue, #400
St. Petersburg, Florida 33701
Telephone: (727) 822-1111
Facsimile: (727) 898-2001
Service Email:
Pleadings@theFLlawfirm.com
lechnerj@theFLlawfirm.com
sonia@theFLlawfirm.com
Attorneys for Plaintiffs